Ruby J. HENDERSON, Administratrix of the Estate of Joe Henderson, Deceased, Appellant,

v.

Victor H. EAVES, Defendant-Appellee,

and

Tri-State Insurance Company, Garnishee-Appellee.

No. 45786.

Supreme Court of Oklahoma.

Nov. 13, 1973.

Hunt & Thomas, Jake Hunt, Oklahoma City, for appellant.

John A. Johnson, of Benefield, Shelton & Johnson, Oklahoma City, for appellee-garnishee.

IRWIN, Justice:

Appellant, Ruby J. Henderson (plaintiff), obtained a default judgment against Victor H. Eaves (defendant) for the wrongful death of her minor son, Joe Henderson. In that case plaintiff alleged that her son had died as a result of a gun shot wound and that defendant had negligently fired the gun. Thereafter, plaintiff commenced garnishment proceedings against Tri-State Insurance Company (garnishee), defendant's alleged insurer, to satisfy this judgment. A jury was waived and judgment was rendered for garnishee and plaintiff appealed.

Garnishee had issued a Homeowners Insurance Policy wherein defendant's mother was the named insured. This policy provided that "The unqualified word 'Insured' includes (1) the named insured and (2) if residents of his household, his spouse, the relatives of either * * *." Plaintiff proceeded on the theory that defendant was a resident of his mother's household and was an "Insured" under the terms of the policy.

The judgment rendered against defendant in the primary action recited that proper service was obtained upon defendant by leaving a copy of the summons with his mother at his usual place of residence at 2416 N.E. 24th street, herein referred to as 24th street. Plaintiff contends that this adjudication concerning defendant's residence is conclusive against garnishee since it had notice of the action filed against defendant and was given the opportunity to defend.

The record discloses defendant was personally served on February 2, 1970, while he was incarcerated in the county jail. The service of summons referred to in the journal entry of judgment was made on

February 3, 1970. When the purported service was made on February 3, 1970, personal service had already been obtained upon defendant. In this connection see Rice v. Bontjes, 121 Okl. 292, 250 P. 89.

In considering plaintiff's contention that the adjudication in the journal entry of judgment concerning defendant's residence is conclusive against garnishee, we will assume, arguendo, that defendant was an "insured" within the terms of garnishee's insurance policy.

Plaintiff relies upon the following cases to sustain her contention. Soukop v. Employers' Liability Assurance Corporation of London, England, 341 Mo. 614, 108 S.W.2d 86; Royal Insurance Company, Ltd. v. St. Louis-San Francisco Railroad Company, 10 Cir., 291 F. 358; and Boughton v. Farmers Insurance Exchange, Okl., 354 P.2d 1085.

In Soukop, supra, plaintiff commenced garnishment proceedings against garnishee-insurer to collect a judgment rendered in her favor against insured. Plaintiff, an employee of insured, had obtained a judgment against insured on the grounds that insured had failed to provide a reasonable and safe place to work as provided by the statutes pertaining to the health and safety of employees. The issue in that case was insured's liability to plaintiff for failing to provide a safe place to work and not whether plaintiff's disability was covered by insurance. Although the question of liability of insured to plaintiff may have been conclusive upon insurer in the garnishment proceedings since it had notice of the primary action and an opportunity to defend, insurer's liability under its insurance policy was not an issue in the primary action. Insurer's liability under the insurance policy was the issue presented in the garnishment proceedings and the judgment was affirmed on the grounds that the injuries sustained were within the terms of the policy.

In Royal Insurance Company, supra, the insured brought an action against insurer to recover on its contract of indemnity the amount it had been compelled to pay in damages. Insurer defended the action on the grounds that insured was not legally liable and no judgment would have been rendered against insured if counsel representing the insured had defended the action on the proper grounds. The primary action had been defended by counsel for insured with the full knowledge, consent and approval of the insurer.

The court recognized that the very question put in issue, tried and determined in the primary action was the "legal liability" of the insured. In that case the court held that where one liable (insurer) is notified of a suit against the person primarily liable (insured) and is given the opportunity to defend, a judgment therein is conclusive against him in the absence of fraud.

Although the liability of insured was established in the primary action and that judgment was conclusive on insurer in so far as insured's liability was concerned, insurer's liability to indemnify insured was not adjudicated in the primary action but in insured's action against insurer.

In Boughton, supra, the insurance policy provided that the insurer would pay insured (Boughton) all sums insured would be legally entitled to recover against an uninsured motorist within the policy limits. Insured brought an action against an uninsured motorist, notified insurer of the action and insurer was afforded the opportunity to defend. Insurer refused to defend because of an arbitration provision in the insurance contract. Insured recovered a judgment against the uninsured motorist and insurer refused to pay the judgment. Insured brought an action against insurer to recover under the terms of the insurance policy. On appeal we held the question of damages and legal liability could not be relitigated.

The issue adjudicated in the primary action was the uninsured motorist's liability to Boughton. The issue adjudicated in Boughton's action against her insurer was the insurer's liability to Boughton under the insurance policy.

The above cases support plaintiff's theory that since garnishee had notice of plaintiff's action against defendant and had an opportunity to defend, that the judgment establishing defendant's liability to plaintiff is conclusive on garnishee-insurer if defendant is an "insured" within the terms of the insurance policy. However, they will not support plaintiff's theory that the recitation in the journal entry of judgment concerning defendant's residence is conclusive against garnishee.

Garnishee cites U.S.F. & G. v. Dawson Produce Co., 180 Okl. 119, 68 P.2d 105. In that case, Singhrs brought an action against Dawson on the grounds that the personal injuries he sustained were caused by the alleged negligent manner in which Dawson maintained its premises. Dawson called upon its insurer, U.S.F. & G., to defend the action and insurer refused to do so. Judgment was rendered in favor of Singhrs against Dawson and Dawson paid the judgment. In that judgment, Singhrs was adjudicated to be Dawson's employee.

Insurer had issued to Dawson an employer's liability policy indemnifying him against loss by reason of liability for damages on account of injuries to Dawson's employees. Dawson sought to be indemnified by insurer for the judgment it had paid Singhrs. Dawson asserted in its petition against insurer that Singhrs was his employee at the time of the injury and that in the previous action he was adjudicated to be its employee.

The issue presented was whether insurer, who had notice of the prior action and called upon to defend, was conclusively bound by the adjudication in the primary action that Singhrs was Dawson's employee. In determining this issue the court pointed out that Singhrs' action was one for the alleged negligent maintenance of the premises and that Singhrs, in his petition, did not seek to have the relationship between him and Dawson classified as that of an employee-employer and his right of recovery against Dawson was not dependent upon establishing such relationship. Therein we held:

"One who is required either by law or contract to protect another from liability is bound by the result of the litigation to which such other is a party, provided the former had notice of such litigation and an opportunity to control its proceedings; but a judgment against a party indemnified is conclusive in a suit against his indemnitor only as to the material facts therein established."

If Singhrs' action against Dawson had been dependent upon establishing that he was Dawson's employee, and insurer had notice of the action and given an opportunity to defend, the adjudication that Singhrs was Dawson's employee would have been conclusive against insurer in Dawson's action against it under the insurance policy.

In the case at bar, defendant's residence was not material to plaintiff's action against defendant and plaintiff's action to establish liability against defendant was not dependent upon defendant's residence. Under these circumstances, the recitation in the judgment rendered against defendant concerning his residence is not conclusive against garnishee even though we assume, arguendo, that defendant was an "insured" within the terms of the insurance policy.

■ Plaintiff contends the trial court erred in its construction of the term "residency" in the insurance policy and his findings of fact were erroneous; that residency of a person does not necessarily mean the place of the physical being of that person; and that at the time of the shooting incident defendant intended and considered his mother's residence to be his permanent residence.

The record discloses that defendant, an adult, was paroled from the Kansas reformatory in 1967 and his mother was his sponsor. His mother lived on 24th street and the insurance policy covered her 24th street property. The shooting incident occurred in June, 1969, and defendant testified he moved to an apartment on 12th street in August, 1968; that he moved his clothes and other personal effects with

him, and after he moved and until the day of the shooting incident, he slept every night at the 12th street address and spent no nights with his mother. Defendant further testified that he paid the rent on the apartment, and his girl friend, with whom he was living and later married, shared the grocery bill; after he moved in with his girl friend he did not contribute any support to his mother; and his parole officer called on him at the 12th street address and when he was released on bond after the shooting incident he returned to 12th street. The testimony of defendant's mother was consistent with the above testimony.

Plaintiff relies on testimony showing that defendant's home telephone was listed with the 24th street address; that he received his mail at that address and his driver's license showed the same address. Plaintiff also relies upon portions of defendant's deposition wherein he had testified from the time of his parole and up to and including the day the shooting incident occurred that his permanent address was with his mother and although he spent some nights away from his mother's house, he considered his mother's residence as his home. Plaintiff also relies upon the testimony of a parole officer but this officer's testimony in its entirety is somewhat contradictory.

In reference to the telephone at the home of defendant's mother being listed in defendant's name, defendant's mother testified that when defendant was released from the reformatory, defendant was trying to find work and defendant's stepfather signed for the telephone for him so he could have a telephone for work. She said defendant did not have a telephone in his apartment on 12th street.

In response to the following question: "Did Victor (defendant) receive mail at your house?", defendant's mother replied: "No. Just late mail. People that didn't know he had moved. Stuff like pamphlets. All kind of stuff like that."

In American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042, the Utah Court had the occasion to consider the term "resident of a household" for the purpose of determining coverage under an automobile insurance policy. That Court said a resident of a household is one who is a member of a family who lives under the same roof; that residence emphasizes membership in a group rather than an attachment to a building.

In Stadelmann v. Glen Falls Ins. Co., 5 Mich.App. 536, 147 N.W.2d 460, the Michigan Court considered a homeowners insurance policy and the clause that defined who was an "insured" under the terms of the policy was exactly the same as the clause we are considering. The Michigan Court referred to the term "resident" as defined in Webster's Dictionary as: "Dwelling, or having an abode for a continued length of time; * * * one who resides in a place; one who dwells in a place for a period of more or less duration. Residence usually implies more or less permanence of abode but is often distinguished from inhabitant as not implying as great fixity or permanency of abode." Therein that Court held that the term "resident of household" is not ambiguous, and as applied to the facts of that case, did not include a relative who is a part of another household.

A garnishment proceeding to recover the amount of a judgment from an insurance company under its automobile insurance policy was presented in Indemnity Ins. Co. of North America v. Sanders, 169 Okl. 378, 36 P.2d 271. Therein the extended coverage clause pertained to a member of the insured's household. This Court cited from Webster's Dictionary that defined "household" as those who dwell under the same roof and compose a family. We also cited Arthur v. Morgan, 112 U.S. 495, 5 S. Ct. 241, 28 L.Ed. 825, wherein the court said "Persons who dwell together as a family constitute a 'household'."

This is an action of legal cognizance and properly triable before a jury. American Employers' Insurance Co. v. McGeehee, Okl., 485 P.2d 754. A trial by jury was waived and the cause tried by the court.

In Rain v. Balph, Okl., 293 P.2d 359, we held that it is for the jury, or the trial court upon waiver of a jury, to determine the credibility of the various witnesses, and the weight and value to be given to their testimony. The conclusion there reached upon those points will not be disturbed on appeal, unless appearing clearly to be based on caprice or to be without any reasonable foundation. In Patty v. Price, Okl., 304 P.2d 289, we held that in an action of legal cognizance tried to the court without a jury, judgment will be given the same effect as a verdict of a jury and same will not be reversed if there is any evidence reasonably supporting the judgment.

Although the evidence is conflicting and somewhat contradictory, there is evidence reasonably supporting the judgment.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.