657 F.2d 814
 INSURANCE CO. OF NORTH AMERICA, Plaintiff-Appellant,
v.
FORTY-EIGHT INSULATIONS, INC., Defendant-Appellee Cross-Appellant,
and
Affiliated FM Insurance Co., Illinois National Insurance
Co., Liberty Mutual Insurance Co., Defendants-Appellants,
and
Travelers Indemnity of Rhode Island, Defendant-Appellee.
 Nos. 78-1322 to 78-1326.
 United States Court of Appeals,
Sixth Circuit.
 March 5, 1981.
 
 Michael R. Gallagher, Thomas E. Betz, Alan M. Petrov, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, G. Cameron Buchanan, Buchanan, Ogne & Jinks, Troy, Mich., for plaintiff-appellant.
 William C. Murphy, (48 Insulations) Reid, Ochsenschlager, Murphy & Hupp, Richard L. Horwitz, Aurora, Ill., W. Robert Chandler (48 Insulations) Cross, Wrock, Miller & Vieson, Detroit, Mich., for defendant-appellee cross-appellant.
 Before KEITH and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.
 
 ORDER
 
 1
 Less than a majority of the active judges of this court having voted in favor of rehearing en banc, the parties' cross-petitions for rehearing have been referred to the panel for consideration. We grant, in part, the petitions for rehearing.
 
 I.
 
 2
 All of the parties have requested that we clarify our opinion, 633 F.2d 1212, regarding its application to mesothelioma and broncheogenic carcinoma. As we indicated in footnote one of our opinion, we pretermitted a discussion of mesothelioma and broncheogenic carcinoma and focused on the disease of asbestosis. The reason for this was that the medical evidence in the record suggested that these diseases were different from asbestosis.
 
 
 3
 Mesothelioma and broncheogenic carcinoma (lung cancer) were dealt with only obliquely in the record, in the district court opinion and in the briefs on appeal. However, the parties are correct that the issue is before us on appeal and that our opinion needs clarification on this point.
 
 
 4
 We conclude that mesothelioma and lung cancer should be treated the same as asbestosis. We reach this conclusion for two reasons. First, the brief discussion in the record about these diseases supports this result. Dr. George Wright testified that recent research tends to show that the development of mesothelioma and lung cancer is linked to inhalation of asbestos and that the development of these diseases is dose-related. In other words, the greater the exposure to asbestos the greater the probability that lung cancer and mesothelioma will develop. It is true that not all persons who breathed in asbestos fibers contract lung cancer and/or mesothelioma. However, as in asbestosis, those persons who contract mesothelioma and lung cancer will have breathed in numerous asbestos fibers over the years.
 
 
 5
 Second, we rely on policy grounds. As Liberty Mutual's Petition for Rehearing reminds us, many of the underlying plaintiffs' complaints against the manufacturers allege both cancer and asbestosis. To treat cancer and asbestosis differently would needlessly complicate settlement and defense of the individual lawsuits. We see no reason to create more difficulties for the parties than already exist in this complicated case.
 
 
 6
 Accordingly, we order that the following language be inserted at the end of footnote one of our opinion:
 
 
 7
 Nonetheless, we conclude that mesothelioma and lung cancer should be treated the same as asbestosis. We reach this conclusion for two reasons. First, the brief discussion in the record about these diseases supports this result. Dr. George Wright testified that recent research tends to show that the development of mesothelioma and lung cancer is linked to inhalation of asbestos and that the development of these diseases is dose-related. In other words, the greater the exposure to asbestos the greater the probability that lung cancer and mesothelioma will develop. It is true that not all persons who breathed in asbestos fibers contract lung cancer and/or mesothelioma. However, as in asbestosis, those persons who contract mesothelioma and lung cancer will have breathed in numerous asbestos fibers over the years.
 
 
 8
 Second, we rely on policy grounds. Many of the underlying plaintiff's complaints against the manufacturers allege both cancer and asbestosis. To treat cancer and asbestosis differently would needlessly complicate settlement and defense of the individual lawsuits. We see no reason to create more difficulties for the parties than already exist in this complicated case.
 
 II.
 
 9
 Those companies advancing the manifestation theory have presented no arguments to us that we did not carefully consider beforehand. We continue to believe that both the plain meaning rule of construction and the rule requiring construction of a policy in favor of the insured support the exposure theory. The companies are correct that not all workers exposed to asbestos fibers contract an asbestos related disease. However, for the worker who does contract asbestosis, the bodily injury first occurred when the worker first started breathing asbestos fibers.
 
 III.
 
 10
 Forty-Eight, while generally content with our decision, has urged us to reconsider our decision to allocate defense costs the same as liability costs. Forty-Eight claims that we have given an unduly narrow construction to the insurance companies' duty to defend.[1]
 
 
 11
 We adhere to our original position. The exposure theory provides a fair method of allocating insurance coverage. This same method can be readily applied to allocating defense costs as well as liability costs. Where costs can be readily apportioned, as here, it is reasonable to have Forty-Eight pay its fair share of defense costs as well as indemnification costs.
 
 
 12
 Accordingly, the Petitions for Rehearing are granted in part, as outlined above, and otherwise denied.
 
 
 13
 MERRITT, Circuit Judge, adheres to the position outlined in his dissenting opinion.
 
 
 
 [1]
 In its Petition for Rehearing, Forty-Eight cites as an example the situation where it is initially believed that Forty-Eight's products injured a worker in a year in which Forty-Eight had insurance coverage. If it turns out that Forty-Eight's products injured a worker in a non-covered year, Forty-Eight claims that it will have to pay the full cost of defending the suit. This ignores the presumption outlined in footnote 21 or our opinion under which continued exposure to Forty-Eight's products is presumed for insurance coverage purposes. Forty-Eight will only have to pay full defense indemnity costs if there is strong evidence that exposure to Forty-Eight's products only took place in years when Forty-Eight had no insurance coverage